# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

JOSEPH Z. WOMBLE, )
          Plaintiff, )
v. ) No. CIV 16-328-RAW-SPS
KAMERON HARVENEK, )
          Defendant. )

## OPINION AND ORDER

Plaintiff Joseph Z. Womble, a pro se state prisoner who is incarcerated at Lexington Correctional Center in Lexington, Oklahoma, appealed the dismissal of this civil rights action. The Tenth Circuit Court of Appeals reversed this Court's judgment and remanded for further proceedings. *Womble v. Harvanek*, 739 F. App'x 470 (10th Cir. 2017) (Dkt. 32). The appellate court held that this Court erred in granting Defendant Kameron Harvanek's motion to dismiss Plaintiff's allegations concerning his lack of access to a sufficient supply of uncontaminated drinking water at Mack Alford Correctional Center (MACC) during a time of high cell temperatures. *Id*. at 473-75.

Following the remand, and at the direction of the Court, Defendant filed a special report in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (Dkt. 92) and a motion for summary judgment (Dkt. 93). Plaintiff has filed a response to the motion (Dkt. 97).

**Standard of Review**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for

the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A party opposing a motion for summary judgment, however, may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Facts**

> The Tenth Circuit summarized the facts of the case as follows:
>
> In his complaint, Womble alleged that Harvanek "is wholly responsible for the day to day operations of the [MACC] and is responsible for Plaintiff's injury." Womble explained that in August 2015, the ice machine and water fountain in his housing unit at MACC stopped working and neither was replaced.
>
> He alleged that the temperatures in his cell exceeded 90 degrees over 15 times in June 2016 and that he became severely dehydrated on three different occasions that month. He asserted that he filed a complaint with the warden on two different occasions that month and that "[t]he complaint was regarding the heat and lack of cold[,] uncontaminated drinking water."
>
> Harvanek responded to Womble's initial complaint (also called a "request to staff") by "telling Plaintiff to drink the water from his cell sink." But Womble alleged that the water from his cell sink "is contaminated, brown in color, and often made Plaintiff sick from drinking [it]. Plaintiff would vomit many times after drinking this water."
>
> In his next complaint/request, Womble "complained that because the temperature was so high on Plaintiff's cellblock, and in Plaintiff's cell, Defendant must provide cold[,] uncontaminated drinking water by providing a water fountain." He alleged that "Defendant responded denying relief stating 'You have [enough] ice and water to prevent dehydration.[']" But Womble alleged that "the cell water was contaminated and warm, and ice was being provided once per day. Plaintiff received one 6 oz scoop of ice per day,

2

half-melted because of the heat."

He further alleged:

> By subjecting Plaintiff to extreme conditions of confinement, specifically excessive heat, forcing Plaintiff to choose between drinking warm, contaminated drinking water or no water at all with full knowledge that this was causing Plaintiff injury and that these conditions are extremely dangerous, Defendant has acted with deliberate indifference to Plaintiff's health and safety needs, in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution.

*Womble*, 739 F. App'x at 471-72 (emphasis in original).

**Exhaustion of Administrative Remedies**

Defendant alleges Plaintiff has failed to exhaust the administrative remedies for his claims.[1] "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).

According to the DOC Offender Grievance Process, OP-090124, an inmate first must

---

[1] Defendant did not raise an exhaustion defense in his first motion to dismiss (Dkt. 16). "The statutory exhaustion requirement of § 1997e(a) is mandatory, and the district court [is] not authorized to dispense with it." *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003) (per curiam) (citations omitted). "[A] defendant raising the issue of exhaustion pursuant to 42 U.S.C. § 1997e(a) is not required to do so in his answer or even in a motion filed by the dispositive motions deadline." *Carbajal v. Keefer*, 2016 WL 1663383, at *3 (D. Colo. 2016) (unpublished opinion) (citing *Beaudry*, 331 F.3d at 1167 n.5).

attempt to resolve his complaint informally by communicating with appropriate staff within three days of the incident. (Dkt. 92-2 at 6). If that is unsuccessful, he may submit a Request to Staff (RTS) within seven calendar days of the incident, alleging only one issue per form. *Id*. at 6-7. If the offender does not receive a response to his RTS within 30 calendar days of submission, he may submit a grievance to the Review Authority (warden's office), asserting only the issue of the lack of response to the RTS. *Id*. at 7-8. If the complaint is not resolved after the response to the RTS, the offender then may file a grievance. *Id*. at 8. If the complaint is medical, the grievance must be submitted to the facility Correctional Health Services Administrator (CHSA). *Id*. Grievances that are an emergency or of a sensitive nature can be submitted directly to the reviewing authority without informal resolution. *Id*. at 14. This is appropriate where the inmate faces a substantial risk of personal injury, sexual harm, or other irreparable harm. *Id*. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority (ARA) or the Health Services Administrative Review Authority within 15 calendar days of receipt of the reviewing authority's decision or any amended decision. *Id*. at 12. The administrative process is exhausted only after all of these steps have been taken. *Id*. at 14.

Defendant asserts Plaintiff never alleged in an RTS that the water in his cell sink was contaminated, discolored, or otherwise unsafe to drink. Instead, Plaintiff complained only that the water was not cold. Defendant further claims Plaintiff failed to exhaust his administrative remedies with respect to the lack of an ice machine and the temperature of the cell block where he was housed. Plaintiff submitted RTSs on these two issues but did not complete the grievance process for either. *Id*.

The record shows Plaintiff filed the following documents concerning the issues in his amended complaint (Dkt. 9):

**Grievance No. 16-17**

The special report indicates that on June 15, 2016, Plaintiff submitted an RTS to Defendant Warden Harvenek. The form stated, "There is no water fountain on A-South. I do not have access to cold water and because of this, I am suffering from heat illness and dehydration." Plaintiff requested replacement of the water fountain on A-South. Harvanek responded, "You have water in you [sic] cell. Cold water does not prevent dehydration. The act of drinking water does." (Dkt. 92-3 at 2).

Plaintiff filed Grievance No. 16-17 about this issue on June 21, 2016. Plaintiff agreed that any water can prevent dehydration, but he claimed "warm and hot water exacerbates heat illness." He again requested that a working water fountain be installed. Harvanek denied relief, stating that Plaintiff had "access to ice and water to help prevent heat-related illness and dehydrate [sic]." (Dkt. 92-3 at 3-5).

On June 29, 2016, Plaintiff filed a appeal to the ARA, complaining that there was no working water fountain or ice machine on his unit, and the failure to provide these appliances violated OP-15000, *et al.*, by failing to provide cold water. He further alleged the lack of cold water and ice had injured him, resulting in his suffering and receiving medical care. (Dkt. 92-3 at 6-7). The ARA's response stated that because Plaintiff had failed to substantiate his appeal with any authority for an error, there was no indication the reviewing authority's response was improper. *Id*. at 8.

After review of the record on this claim, the Court finds Plaintiff exhausted the administrative remedies for his allegations concerning the lack of cold water.

**Requests to Staff**

On June 21, 2016, Plaintiff submitted two RTSs to C/M David Mauk. Defendant, however, alleges Plaintiff failed to complete the administrative exhaustion process for the

5

claims in the two RTSs. Plaintiff did not address this exhaustion issue in his response to the motion for summary judgment (Dkt. 97).

The first RTS stated the following:

> The ice machine does not work on A-South. Although buckets of ice are being delivered daily, this does not solve the problem. Many times, the ice runs out before this inmate can get any. And I am heat sensitive because I take medications that affect my body temperature.

(Dkt. 92-4 at 2). Plaintiff requested immediate repair of the ice machine. *Id.* C. Lowe responded to the RTS: "A work order has been submitted. Please contact Medical for health related issues." *Id.*

Plaintiff's second RTS asserted the cellblock temperature was constantly between 85 and 100 degrees Fahrenheit. He stated he was sensitive to heat and had suffered heat stress and heat exhaustion, but the prison administration had completely ignored the problem. Plaintiff also contended the National Weather Service and the Centers for Disease Control had declared that temperatures above 90 degrees were heat emergencies and had advised people to move to air conditioned area. He requested that the temperature of the entire cell block be maintained below 80 degrees Fahrenheit. (Dkt. 92-4 at 2-4). C. Lowe's response to this RTS directed Plaintiff to "contact medical with this issue." *Id*. at 2.

The Court has carefully reviewed the record and finds Plaintiff's claims regarding the broken ice machine and the temperature of his unit were not exhausted by filing grievances and appeals to the ARA. Therefore, these claims cannot proceed. The Court further finds Plaintiff did not file any RTSs or grievances concerning the alleged contaminated water.

**Eighth Amendment Claims**

As shown above, Plaintiff only exhausted his claims with respect to his requests for cold water. To prevail on a "conditions of confinement" claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is "'sufficiently serious'" to

implicate constitutional protection, and (2) prison officials acted with "'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 302-03 (1991)). "[O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298 (internal citation omitted).

To satisfy the first requirement, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. With regard to the second requirement, the Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." *Id*. at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." *Id*. at 836-37. "To show deliberate indifference, 'a plaintiff must establish that defendant(s) knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it.'" *Womble*, 739 F. App'x at 472 (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).

The Eighth Amendment "does not mandate comfortable prisons," and conditions imposed may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). An important factor in determining whether conditions of confinement meet constitutional standards is the length of the incarceration. Thus, a "filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978). The Court notes that Plaintiff was transferred from MACC to another facility on or before August 19, 2016. (Dkt. 79).

**Discussion**

The Court has carefully reviewed the record and construes Plaintiff's pleadings liberally. *Haines v. Kerner*, 404 U.S. 519 (1972). This relaxed standard, however, does not relieve his burden of alleging sufficient facts on which a recognized legal claim could be based. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Defendant maintains his acts or omissions, if any, did not result in the denial of "the minimal civilized measure of life's necessities," as set forth in *Farmer*, because Plaintiff had access to water by means of the sink in his cell. (Dkt. 92-3 at 3-4). Defendant thus contends the deliberate indifference claim must fail, because Plaintiff cannot establish the objective prong of the deliberate indifference analysis.

Although Plaintiff asserted in his grievance that he had "been seen by medical" (Dkt. 92-3 at 7), Defendant argues Plaintiff did not explain in the grievance or in his amended complaint when he received medical treatment. Plaintiff asserts in his response to the motion for summary judgment that he saw medical for dehydration on June 20, 2016, and July 26, 2016. (Dkt. 97 at 6). He allegedly was told to drink more water and to have no excess heat exposure. *Id.* Plaintiff does not allege he was told to drink cold water. Plaintiff's medical records, however, do not indicate he was seen by medical staff for any heat-related complaints or issues related to sickness from drinking the water from his cell sink. (Dkts. 94-1 through 94-4).

Nonetheless, the Court notes that Plaintiff's Activity Housing Summary, dated July 26, 2016, and signed by Heather Knight, RN, states the following: "Based upon medical examination and/or review the following restrictions apply. Offenders may not remove themselves from these medical restrictions without clinical documentation. No prolonged sun exposure or direct sunlight. No excess heat, humidity, or cold exposure." (Dkt. 94-4 at

4). Plaintiff's name, however, was not included in the June 8, 2016, MACC Heat Contingency Plan, which listed more than 200 inmates who met the criteria for increased risk for heat-related illnesses. (Dkt. 92-5).

Even with a medical restriction, the Court finds Plaintiff has failed to provide any authority that the denial of cold water or ice in a hot cell violated the prohibition against cruel and unusual punishment. In its Order remanding this case, the Tenth Circuit stated: "Lack of access to chilled water and ice would not, standing alone, constitute a sufficiently serious deprivation to sustain an Eighth Amendment conditions of confinement claim. However, access to a sufficient supply of *uncontaminated* drinking water is a basic human need." *Womble*, 739 F. App'x at 473 (emphasis in original). For these reasons, the Court finds Plaintiff has failed to demonstrate the objective component of deliberate indifference has been met with respect to the claim regarding cold water.

Defendant alleges Plaintiff also has failed to satisfy the subjective component of the test for deliberate indifference. Defendant claims he did not know that Plaintiff faced a substantial risk of serious harm, and he was unaware of any medically necessary limitations or risks for Plaintiff. As noted above, Plaintiff was not on the MACC Heat Contingency Plan sent to Defendant by the Correctional Healthy Services Administrator, which identified inmates who were at risk for heat-related injuries. (Dkt. 92-5). Citing the Heat Contingency Plan, Defendant asserts Plaintiff was not on any housing restriction. Defendant, however, did not reference Plaintiff's Activity Housing Summary.

The Tenth Circuit has explained the subjective component of a deliberate indifference claim as follows:

> The deliberate indifference standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Farmer*, 511 U.S. at 836 . . . Thus, "[d]eliberate indifference does not require a finding of express intent to harm." *Mitchell v. Maynard*, 80 F.3d 1433, 1442 (10th

> Cir.1996) (citation omitted). An inmate "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842, . . . (emphasis added). An official "would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Id*. at 843 n.8.

*Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005).

"The subjective component is satisfied if the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [ ]he must also draw the inference.' " *Id*. at 751 (quoting *Farmer*, 511 U.S. at 837).

Here, the Court finds Plaintiff has failed to meet the subjective test of deliberate indifference. Therefore, the denial of cold water did not constitute an Eighth Amendment conditions of confinement claim.

**Qualified Immunity**

Finally, Defendant alleges he is entitled to qualified immunity. Qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). It provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. at 818). Qualified immunity also shields officers who have "reasonable, but mistaken beliefs," and operates to protect officers from the sometimes "hazy border[s]" of the law. *Saucier v. Katz*, 533 U.S. 194, 205 (2001).

When a defendant asserts qualified immunity, the plaintiff bears the heavy burden of demonstrating: (1) that the defendant's actions violated the plaintiff's constitutional or statutory rights, and (2) that the right was clearly established at the time. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The court "has discretion to determine 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Id.* (quoting *Pearson*, 555 U.S. at 129). In this case, because Defendant did not violate Plaintiff's constitutional rights, this Court need not address whether those rights were clearly established. Accordingly, Defendant Harvanek is entitled to qualified immunity.

**Conclusion**

After careful consideration of the pleadings and other submitted materials in this case, the Court is of the view that there are no genuine issues of material fact concerning whether Plaintiff's claims regarding the broken ice machine, the high temperatures, and the alleged contaminated water are unexhausted. There also are no genuine issues of material fact with respect to the absence of a constitutional violation arising from the lack of cold water. The Court further finds there are no genuine issues of material fact with respect to Defendant's entitlement to qualified immunity. Therefore, summary judgment must be GRANTED.

**ACCORDINGLY,** Defendant's motion for summary judgment (Dkt. 93) is GRANTED, and this case is DISMISSED in its entirety.

**IT IS SO ORDERED** this 26th day of September 2019.

Ronald A. White
United States District Judge
Eastern District of Oklahoma